**Affirmed and Plurality Memorandum Opinion filed February 11, 2020.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-18-00178-CR

---

**BRIAN ADDINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1510917**

---

## PLURALITY MEMORANDUM OPINION

Appellant Brian Addington appeals his conviction for indecency with a child. Appellant complains of alleged evidentiary errors in the guilt/innocence phase and in the punishment phase of his case. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with indecency with a child by touching the breast of his daughter with intent to sexually arouse and gratify his own sexual desire. He

pleaded "not guilty."

*Guilt/Innocence Phase of Trial*

During the guilt/innocence phase of trial, the jury heard testimony from the complainant, appellant's stepson (the complainant's half-brother), the complainant's mother (appellant's ex-wife), the complainant's friend, that friend's mother, a police officer, and a forensic interviewer.

The complainant testified to a pattern of sexual abuse by her father, beginning when she was eleven years old and continuing until the charged offense, which occurred when she was thirteen. She provided details of the charged offense and previous incidents, including the city, setting, type of sexual contact, and appellant's requests on those occasions. The forensic interviewer gave accounts of her interviews with the complainant, noting that the child was able to provide details clearly and consistently, including sensory details, places, and the manner and means for the occurrences. Appellant's stepson testified that appellant had confessed to him over the phone about his sexual improprieties with the complainant. Appellant's sister provided an account from childhood, recounting that appellant had forced her to perform oral sex on him when she was seven or eight years old. Leading up to this testimony, over appellant's objections, the prosecutor asked the sister several times "what she thought" when she found out about the charges against her brother. This line of questioning is the only basis of appellant's complaint on appeal concerning the guilt/innocence phase.

The jury found appellant guilty of the charged offense.

*Punishment Phase of Trial*

During the punishment phase of trial, the jury heard testimony from the complainant's mother, the director of therapy and psychological services at the

2

Harris County Children's Assessment Center, and a supervisor with Harris County Community Supervision and Corrections Department. The latter two witnesses discussed their experiences working with sex offenders, treatment, and the nature of a sex offender's obligations while under community supervision. The complainant's mother testified about the impact of the offense on her life and on the complainant's life. Over appellant's objection, the complainant's mother answered the prosecutor's question about whether she believed appellant should be given community supervision. At the conclusion of the punishment phase of trial, the jury assessed punishment at twenty years' confinement.

## II. ISSUES AND ANALYSIS

**A.  Did the trial court abuse its discretion by permitting appellant's sister to offer opinion testimony concerning the complainant's credibility?**

In his first issue, appellant complains that the trial court abused its discretion by permitting his sister to offer improper opinion testimony as to the complainant's credibility and the truthfulness of her allegations against appellant. To preserve his first appellate complaint for appellate review, appellant had to communicate this complaint to the trial court by a timely request, motion, or objection stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1; *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). Appellant also had to secure an express or implied ruling or object to the trial court's refusal to rule. *See* Tex. R. App. P. 33.1; *Pena*, 285 S.W.3d at 463–64. Appellant must have preserved error in the trial court as to the complaint raised on appeal. Tex. R. App. P. 33.1(a)(1); *Nino v. State*, 223 S.W.3d 749, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Thus, this court first reviews the record to determine whether appellant's complaint on appeal comports

with a timely, specific complaint asserted and overruled in the trial court.

Under his first issue appellant complains about three statements by appellant's sister during the guilt/innocence phase of trial. Appellant's sister made the first statement in response to the following question from the State: "When you first learned about what happened between [appellant] and [the complainant], what did you think?" Appellant's counsel objected as follows: "That would not be relevant or material, what she thought about something." The trial court overruled the objection. Appellant's sister then made the first statement, testifying that "I believed it, and I was saddened." Appellant's objection that the question sought testimony that would not be relevant or material would preserve a complaint for an objection under Rule 402 of the Texas Rules of Evidence that the testimony was not relevant, but not an objection to improper opinion testimony as to the complainant's credibility or the truthfulness of her allegations against appellant. Appellant's counsel's additional remark — "what she thought about something" would not have alerted the trial court that appellant was objecting to improper opinion testimony. *See Nino*, 223 S.W.3d at 755 (concluding appellant's hearsay objection was insufficient to preserve an appellate complaint that the testimony fell outside witness's area of expertise). Thus, as to the first statement, appellant did not preserve error in the trial court on his first issue. *See West v. State*, 554 S.W.3d 234, 242 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Nino*, 223 S.W.3d at 755.

Immediately after appellant's sister testified, "I believed it, and I was saddened," the State asked her, "And why did you believe it?" Without an intervening objection from appellant, appellant's sister made the second statement: "I would have believed [the complainant] anyway because she is my niece and I know her." Appellant's trial counsel then lodged his objection: "This is

4

speculation. The witness is not allowed to testify what they believe to be true. I object to that. It's not relevant or material." The trial court overruled the objection.

Appellant's objection that the testimony was not relevant or material at most would preserve an objection under Rule 402 of the Texas Rules of Evidence that the testimony was not relevant, but not an objection to improper opinion testimony as to the complainant's credibility or the truthfulness of her allegations against appellant. *See Nino*, 223 S.W.3d at 755. Appellant's objection that the statement was speculation, at most would preserve an objection to the alleged speculativeness of the reasons for appellant's sister's belief. But appellant's speculation objection would not have alerted the trial court that appellant was objecting to improper opinion testimony as to the complainant's credibility or the truthfulness of her allegations against appellant, so the speculation objection did not preserve error as to appellant's appellate complaint. *See Kipp v. State*, 876 S.W.2d 330, 336 (Tex. Crim. App. 1994) (plurality op.) (concluding that appellant's complaint regarding an improper opinion on the credibility of complainant was different from the speculation objection appellant made at trial). Appellant's objection that "[t]he witness is not allowed to testify what they believe to be true" did not alert the trial court that appellant was objecting to improper opinion testimony as to the complainant's credibility or the truthfulness of her allegations against appellant. The statement to which appellant was objecting was his sister's statement of the reasons for her belief, not her testimony as to what she believed to be true. As to the second statement, appellant did not preserve error in the trial court on his first issue. *See Kipp,* 876 S.W.2d at 336; *West*, 554 S.W.3d at 242; *Nino*, 223 S.W.3d at 755.

Appellant's sister made the third statement in response to the following question from the State: "what were your thoughts when you heard about what had

5

occurred between [appellant] and [the complainant]?" Appellant's counsel objected that "what she thought is not relevant or material." After the trial court overruled the objection, appellant's sister made the third statement, testifying that "I believed that he had done it, and it made me very sad to hear." Appellant's objection that the question sought testimony that would not be relevant or material would preserve a complaint for an objection under Rule 402 that the testimony was not relevant, but not an objection to improper opinion testimony as to the complainant's credibility or the truthfulness of her allegations against appellant. Thus, as to the third statement, appellant did not preserve error in the trial court. *See West*, 554 S.W.3d at 242; *Nino*, 223 S.W.3d at 755.

As to each of the three statements of which appellant complains in the first issue, appellant did not voice his appellate complaint in the trial court. Thus, appellant did not preserve error in the trial court as to his first issue. *See Kipp,* 876 S.W.2d at 336; *West*, 554 S.W.3d at 242; *Nino*, 223 S.W.3d at 755.

Even presuming for the sake of argument that appellant's speculation objection to the second statement was sufficient to voice his appellate complaint, appellant did not voice this speculation objection as to the third statement, in which the witness testified that she believed that appellant had "done it," and that made the witness very sad. Though appellant objected to the third question as inquiring about a subject that was irrelevant or immaterial, appellant does not raise this complaint on appeal, so this court need not address this objection. *See Wright v. State*, 28 S.W.3d 526, 536 n.9 (Tex. Crim. App. 2000). Thus, any error in overruling the speculation objection would be harmless because the witness's opinion as to the complainant's credibility and the truthfulness of the complainant's allegations was admitted in the third statement, and appellant did not raise his appellate complaint as to that statement. *See Leday v. State*, 983

S.W.2d 713, 717 (Tex. Crim. App. 1998) (stating that "the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged") (internal quotations omitted).

We overrule appellant's first issue.

**B.    Did the trial court reversibly err by allowing the complainant's mother to testify regarding her opinion that probation was not appropriate for appellant?**

In his second issue, appellant complains that the trial court reversibly erred during the punishment phase of trial when the court overruled his objection to the State's question to the complainant's mother about whether the mother thought probation was appropriate. In response to the question, the mother responded, "No, sir. I think that he would push the line." Appellant objected, "this is opinion, speculation" and that it was "not 37.07 material," an apparent reference to article 37.07 of the Texas Code of Criminal Procedure. The trial court overruled the objection, and the witness continued, explaining that Children's Protective Services had told appellant to avoid contact with both the mother and the complainant but that appellant "would sit at the end of my road and send texts as to why my bathroom lights were on."

A punishment recommendation from a non-victim, such as an expert or a victim's family member is inadmissible. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (providing that the wishes of a victim's family member as to a defendant's fate exceed the parameters of victim-impact evidence and are not admissible). Presuming for purposes of analysis that appellant properly preserved his complaint and that the trial court erred in allowing the testimony, the harm analysis would yield no basis for appellate relief.

The overruling of appellant's objection to the State's question about

probation was not constitutionally required; therefore, any error in overruling this objection would be nonconstitutional. *See Wright v. State*, 374 S.W.3d 564, 580 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (holding that, with respect to the erroneous admission or exclusion of evidence, courts use a constitutional harm analysis only if the correct ruling was constitutionally required). This court has held that this type of error is non-constitutional and is analyzed for harm under Texas Rule of Appellate Procedure 44.2(b). The court must disregard a nonconstitutional error that does not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). Appellant's substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood the jury's decision was adversely affected by the error, the court considers everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *See id.* The court also may consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *See id.* at 355–56. Additionally, the presence of overwhelming evidence supporting the finding in question is a factor in evaluating harm. *See id.* at 356–58; *Lindsay v. State*, 102 S.W.3d 223, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

The State asserts that appellant was ineligible for community supervision as a matter of law because the complainant was under fourteen years of age at the time of the offense. The trial court did not instruct the jury that appellant was eligible for community supervision only if the complainant was fourteen years of

age or older at the time of the offense. The trial court instructed the jury that it could recommend community supervision if the jury assessed punishment at ten years' confinement or less and if it found that appellant had never before been convicted of a felony. So, this court presumes for the purposes of this analysis, that appellant would have been eligible for probation if the jury assessed punishment at ten years' confinement or less and if he had never before been convicted of a felony.

The complainant's mother's opinion as to whether appellant should get probation consisted of two short sentences: "No, sir. I think that he would push the line." The remainder of her testimony during the punishment phase consisted of statements related to appellant's prior inability to respect boundaries imposed by third parties for her and her daughter's protection, her view that appellant was unwilling to accept help from others, and testimony about the traumatic effects suffered by her daughter and her ongoing psychological treatment. Each side presented professionals who spoke on pedophilia, the life of a registered sex offender, and community supervision.

The trial court admitted all of the evidence from the guilt/innocence phase into evidence at the punishment phase. This evidence included testimony from eight witnesses. Significantly, the complainant testified about the history and pattern of sexual abuse that she had endured beginning when she was eleven years old and living in California. The first act occurred during a discussion between appellant and the complainant while the two were sitting in appellant's car in a store parking lot. After telling her that she needed to know how to please a man, appellant pulled down his pants, began masturbating in front of her, and made her hand touch his genitalia. The complainant testified that this type of sexual conduct recurred. The complainant also testified that when she was eleven, appellant, who

worked on cell phone towers, took her to work with him and brought her to a secluded area and asked her to put her mouth on his penis. The complainant testified that she complied, but told appellant she did not like it. The complainant testified that her father had her perform these acts "weekly" in different places. The complainant testified that for years she did not tell her mother about what appellant was doing because the complainant did not want to break apart the family. The complainant testified that the conduct continued as she grew older, and also when the family moved to Houston.

The State mentioned during closing argument that if all of appellant's conduct had occurred in Texas, he could have been charged with continuous sexual assault and the minimum punishment would have been twenty-five years. But, the State said that, because most of the conduct occurred in California, appellant was charged only with indecency. The State requested the maximum punishment of twenty years' confinement, and the jury assessed this punishment.

Appellant asserts that all of his punishment-phase evidence consisted of informing the jury of what would be expected of appellant should he receive community supervision. Appellant also asserts that his counsel spent most of his closing argument asking the jury to recommend community supervision. Though appellant focused on his request for community supervision, he would have been eligible for community supervision only if the jury assessed punishment at ten years' confinement or less.

The State did not discuss or otherwise emphasize the complainant's mother's testimony during the State's closing arguments. *See Hoffman v. State*, 874 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). In addition, the jury would not have been surprised that the complainant's mother did not desire that appellant be released on community supervision. *See Simpson*, 119

S.W.3d at 272.

After examining the entire record, including the serious nature of the charged offense and the evidence of extraneous offenses that appellant committed against his daughter, this court cannot conclude that the admission into evidence of the complainant's mother's desires for appellant to not have community supervision had a substantial and injurious effect on the jury's decision in punishment or had any more than a slight effect on it. *See Wright*, 374 S.W.3d at 580–81 (concluding that any error in admitting evidence during punishment hearing was harmless); *Lindsay*, 102 S.W.3d at 229 (concluding that the erroneous admission of victim-impact testimony during the punishment phase was harmless based on the overwhelming evidence and evidence of other extraneous offenses); *Boston v. State*, 965 S.W.2d 546, 550 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (concluding that the erroneous admission of victim impact statement was harmless because the state did not emphasize that testimony and there was abundant evidence of prior offenses). Accordingly, even if the trial court erred in admitting the complainant's mother's testimony, the error does not warrant reversal. *See Wright*, 374 S.W.3d at 580–81; *Lindsay*, 102 S.W.3d at 229; *Boston*, 965 S.W.2d at 550. Appellant's second issue is overruled.

The trial court's judgment is affirmed.


/s/    Kem Thompson Frost
       Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant. (Justices Spain and Poissant concur without opinion.)

Do Not Publish — Tex. R. App. P. 47.2(b).

11